Next case is Roxanne Franklin-Mason v. United States, 2016. 1965. Ms. Jones, when you are ready. Good morning, Your Honors. May it please the Court, my name is Lisa Jones. I represent Roxanne Franklin-Mason. Ms. Mason appeals the denial of her motion for summary judgment as well as the grant of the defendant's, the Department of the Navy's motion for summary judgment relative to her breach, the breach of her settlement agreement with the Navy arising from an employment discrimination Title VII case. There's a lot in here that you're arguing, but just so we can pare it down a little bit. Absolutely. You agreed that your fraud in the inducement claim has to fail because you have not repudiated the contract yourself and given the money back and that you can't have a certain inducement claim unless you're prepared to repudiate the contract on your side and give up the benefits? I'm sorry, I don't want to interrupt you, Your Honor. Go ahead. I don't disagree with that. I would suggest, though, Your Honors, that the facts underlying the claim do bolster Ms. Franklin-Mason's claim relative to the breach of good faith and fair dealing. Okay. But, Your Honors, when Ms. Franklin-Mason negotiated her return to duty as a part of the settlement agreement, remember, she did not have to return to duty. The Navy was facing a trial date and summary judgment denial and a back pay calculation of more than a million dollars. Yes, but we know all those facts, so get to what you think are your strongest points on how the Navy breached the settlement agreement. And what are your client's damages as a result, Your Honor? Well, the Navy, I would argue, Your Honors, that the Court of Federal Claims erred in determining that the breach of their obligation to have a financial manager, the NFAF financial, GS-15 financial manager. Was your client injured by any breach of that nature? She was injured, Your Honor, because she could not perform the work that she anticipated that she would be performing, nor did she perform the work that she anticipated. But what damage has she suffered as a result of that? She got her job back. She did get some financial work, and the government says there were reasons why they didn't have a financial manager, but she was allowed to work. So what are her damages? Well, she... Rather than just an argument with someone. I'm sorry? Rather than just having something to argue about. How was she hurt? She was hurt in the same way that she was hurt from the standpoint that although she was on the payroll, to the extent that her ability to have promotional opportunities was frustrated, to the extent that by the time she filed her motion for preliminary injunction, that she was not given any work for almost nine months, frustrated her ability to be a functioning employee at the Department of the Navy. So I guess my question is then, why wouldn't... I mean, there are different types of breaches of contract. So to the extent that they had financial obligation to pay her back pay, to pay the attorney's fees, to create the TSP account, you agree now that those things actually occurred, right? I'm sorry. The financial obligations under the settlement agreement, the Navy fulfilled those. Eventually, yes. Right. And the expungement as well. No. Well, I don't think there's any record evidence that it fulfilled its obligation to expunge the OPM within 60 days as noted in the contract. No, but it was ultimately expunged, not within 60 days. I argue that that's an issue of fact. The affidavits... There are multiple pieces of evidence in this record that say that people who reviewed her employment file demonstrate that it's not there now. It may not have been done in 60 days. It might not have been. But it is not there now, right? You have no piece of evidence. You've put forth no piece of evidence that would suggest it hasn't been expunged. There's no copy currently floating around that you're aware of that show it. Well, to the extent that she's no longer a federal employee. But I would argue, particularly given the fact that the defendant has given us two versions within this litigation of the OPF file, one version that has a set of documents and another version that has at least another set of documents, or at least one document that is not in the other version, raise questions about whether or not this is actually her official file. And I would argue, Your Honor, I would submit to you that the affidavits and declarations offered by the defendant by the Navy on that score raises an issue of fact about whether this was a reconstructed file that, at least at some point before she left the Navy, that file was not expunged. And to the extent that that file might not have been expunged, I would argue, and to the extent that she was trying to get additional opportunities via transfer or reassignment and other applications, there may be an issue of fact as to whether or not that information in her OPF file may have contributed to her inability to move within the government. So there's two pieces of my question. The first is, if we're talking about the non-monetary obligations, all right, to give her certain kinds of assignments and to give her certain kinds of supervisory, those are the kinds of things that normally, that breach would lead to a specific performance requirement, right? Correct. Okay. And now you're saying that they also could have flowed into other kinds of damages because there were other opportunities. Is there anything in the record that specified that she applied for a different position and wasn't able to get it because she didn't do that right kind of work or that there was a transfer that she sought and didn't get it because of a breach by the Navy of the non-monetary portions of the contract? I believe there is, Your Honor, and if I'm not sure if I'm going to be able to put my finger on it immediately, but I believe that there is not only testimony, but I believe there's testimony that is incorporated in the joint appendix where Ms. Franklin Mason testifies that there was a circumstance in which she had asked Mr. Penix, number one, asked Mr. Penix to help her prepare a letter of recommendation so that she could seek other opportunities within the Navy. There's also, I believe, record evidence about conversations that she had with the Navy after she came back in November of 2002. And there's a letter in, in fact, we were looking at it yesterday. There's a letter from the Navy's attorney relative to a conversation that she was having with Ms. Franklin Mason's attorney about attempting to get Ms. Franklin Mason a reassignment or a transfer. Right, but there was nothing that, that's just because she didn't want to be working with particular people or she wanted other kinds of opportunities. There was no reference to that being something that would either have enhanced her resume or given her a step increase or more pay. There's nothing like that in the record that I could find. Well, I would argue that to the extent that she was complaining and there's record evidence, I would, I believe that at least in the motions that her attorneys at the time were filing with the district court about the fact that the way the supervisory hierarchy was constructed, notwithstanding the terms of the settlement agreement, in part prevented her from some promotional opportunities within MSC. That was one of the main issues that she was discussing. None that were defined, none that she sought, none that it's clear would provide her with monetary relief. Well, to the extent that the conversations surrounding her return to duty, and that's why I started with that. And those conversations were surrounding not only the hierarchy that she would be performing under when she returned to work. Obviously, she wasn't going to be going back to the office of the comptroller. Ms. Jones, you're well into your rebuttal time. I assume you'd like to save it? Yes, sir. Do you want me to finish? I'm following you. Yeah, I got it. Thank you. Ms. Enloe. May it please the court. The court should affirm the decision of the Court of Federal Claims on all three counts. As for count one and two, there's no liability and no damages. Now, it's true that the Navy did not hire this financial manager position. But this is not a material breach of the settlement agreement. She got a comparable experience performing comparable work with supervisors with comparable financial backgrounds. It's important to note that the supervisors she did work for, Penix and later Captain Herb, and then the program manager, Mr. Nelson, they would have been supervising this financial manager that she was supposed to report to had that position ever been funded. Now, the Navy, this settlement agreement certainly had some financial obligations, but it had a lot of other stuff that the Navy said it was going to do, right? It did. And putting aside the question of whether you can incorporate other surrounding conversations, but even just in the document itself, the Navy said it was going to do a lot of things. And so it's not good enough for the Navy just to say we gave her all the financial benefits that the settlement agreement promised and to say the rest of it was sort of up to us whether or not we could pull it off. I mean, they actually entered into a settlement agreement that settled a case where they were facing some serious liability, and they committed to do certain things. Yes, Your Honor, and several points on that. First is that they fulfilled the rest of these obligations that don't have financial components, such as the training, such as the OPF. The Navy did fulfill those obligations. And the Navy fulfilled even the obligations that had financial components. The Navy, there was no material breach here. What about the kind of work that she was doing? She got financial work. The record is full of evidence that she got financial work. The most striking evidence is this performance evaluation from 2000, which Ms. Franklin Mason admitted that she wrote most of it, and she also signed it. And that's at Appendix 549. That performance evaluation specifically acknowledges that she designed and instituted a financial management system for the office. She advised and consulted other managers in the comptroller's office before the release of financial statements. She troubleshooted these financial statements to make sure any errors were fixed, that she worked on amending current policies and procedures and oversaw financial management trends. That's all in this 2000 evaluation. That's what she was doing in the first year. The record is also full of instances of other financial work. For example, there's several e-mails, one dealing with budget questions from the big Department of the Navy review. That's at Appendix 818. There's a couple of e-mails regarding the Triannual Review of Commitments and Obligations Report, and that the financial staff at this office was directed to review all outstanding financial commitments, unliquidated obligations, unpaid balances. And that's at Appendix 269 and 267. She also was doing a financial handbook. She was supposed to incorporate her thoughts and ideas in that. It's at 823 and 594. And then finally, Captain Herb tried to give her this monthly variance assignment, and the variances were to look at the budget and then see the execution and figure out what's the variance, how does it vary between the two, and why. And that was key. That was key to Mr. Nelson. And that's what Ms. Franklin-Mason thought she was going to be doing when she came to work. She admits that at Appendix 291. She thought she was going to be doing this monthly variance work. So even if there was a potential breach in that she wasn't an advisor to the financial manager because there was none, the Court of Federal Claims held there were no damages. To your knowledge, was there anything in this record that established, for example, that as a result of one of the breaches she alleges that she wasn't able to gain promotions or employment or mobility or something? I'm not aware of anything like that in the record, Your Honor. Also speak to the reconstructed file because I didn't think the reconstructed file had the potential removal in it either. I thought that the record showed that Appellant's counsel said, well, there were two different files. So, well, there may have been two different files and there may have been some confusion, but I didn't think either file demonstrated that the Navy was failing to meet with its obligation to expunge. That's correct, Your Honor. The personnel file that's in the record, first of all, it's immaterial whether it's original or reconstructed. That doesn't matter. The settlement agreement simply says expunge the files. The Navy did that. There was a human resources employee in 2005 at the evidentiary hearing in front of Magistrate Judge Faciola who reviewed her file, said it didn't contain any references to her proposed removal from the 80s. And then in 2015, another employee reviewed this file, and you have the file itself. There is simply nothing in the record showing that the Navy didn't expunge the files. And even if it didn't, even if there was something in the record, which there's not, she's not proven any damages. She hasn't shown that she tried to go get other jobs with this file and those were denied, for example. Ms. Franklin Mason, in her reply brief, points to one line of testimony at page 999 in the appendix, saying that she sent Penix's letter of recommendation out to vacancy announcements. That's not sufficient. There's no indication of whether or not anybody even offered her a job on that. That's literally the entirety of the record on whether or not she saw other jobs. So it's unclear whether or not she was denied any jobs. Or even whether her potential future employers were made aware of the information they should have been made aware of. Exactly, Your Honor. Yes. If the Court has no further questions, for these reasons and for the reasons stated in the brief, we'll move on. Thank you, Ms. Enloe. Ms. Jones has about a minute and a half to move on. I'm sorry, Your Honor. You have 1.43. Okay, Your Honor. In five years of being at the Navy, Ms. Franklin Mason was given, in the first three years, clerical assignments, an oracle assignment, and no financial work. No Series 500 financial work. Ms. Franklin Mason, I submit to you, provided material facts that raises an issue of fact that precluded summary judgment on this issue. What about her own writings and her own evaluation? I'm sorry? What about her own writing and her own evaluation where she describes all the financial work she did? This is, if you compare the performance evaluation with the letter of recommendation. Again, and I believe the testimony is in the record, where Ms. Franklin Mason says that she had asked that Ms. DePendix write a letter of recommendation so that she could leave. It's within the context, and I believe it's in the record, where she says, I'm not doing the things that I thought I was going to be doing while I was here. Help me get out. If you compare the letter of recommendation with the performance evaluation and the position description, it mirrors particularly the letter of recommendation that she and Pendix wrote. Now, Ms. Franklin Mason doesn't argue that she has performed that work before. She performed it when she was working for the office of the comptroller back in the 80s. She just didn't do it while she was at PMY. I see that I'm out of time. Does the court have any additional questions? Thank you, Ms. Jones. We'll take the case under advisement.